# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

### FIRST DISTRICT—MARCH TERM, 1879.

### SUSAN MARTINS
### v.
### CHARLES GREEN.

JUDGMENT NOT SUPPORTED BY THE EVIDENCE.—Appellee claimed to recover of appellant for goods sold to one C. by her authority. The burden of proof was upon appellee to show that appellant authorized the purchase of the goods, and failing to establish that fact by a fair balance of testimony, the judgment is reversed.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. PLINY B. SMITH, for appellant.

Mr. ADOLPH MOSES, for appellee; that the finding of a court has the same force as the verdict of a jury, and there being testimony to sustain the judgment, it should not be reversed, cited Bishop v. Busse, 69 Ill. 403; Wiggins Ferry Co. v. Higgins, 72 Ill. 517; T. W. & W. R. R. Co. v. Elliott, 76 Ill. 67; Plummer v. Rigdon, 78 Ill. 222; Miller v. Balthasser, 78 Ill. 202; McClelland v. Mitchell, 82 Ill. 35; Nimmo v. Kuykendall, 85 Ill. 476.

Martins v. Green.

MURPHY, P. J.   In September, 1876, Theodore Martins, in business at No. 46 North Clark street, Chicago, as a grocery man, departed this life, leaving him surviving his widow, the appellant.   At the time of his decease Charles Martins, his brother, was in his employ as clerk or assistant in and about such business.   It is disclosed by the record, that after the decease of Theodore Martins, Charles, his brother, continued the business in the name of deceased, without any purchase of the stock in trade until the 13th day of January, 1877, when the appellant, having been appointed administratrix of her husband's estate, executed a bill of sale of said stock and fixtures to Charles Martins, her late husband's brother, and took a chattel mortgage back to secure the payment of the purchase price, $538.98; that at some time, between the decease of Theodore Martin and the 13th day of January, 1877, Charles Martins purchased of appellee and caused to be delivered at the store, goods of the value of $152.20, the amount of the recovery in the court below. The question raised is whether these goods were purchased by Charles Martins as the agent of the appellant, with sufficient authority from her to bind her by such purchase, or whether he purchased them on his own account.   It is claimed by appellee that the business was carried on from September, 1876, to the 13th day of January, 1877, by the appellant on her own account, and that Charles Martins was her agent for the purpose of managing and conducting the same; and as a consequence had her authority as an incident to such general power to purchase the goods in question.   It is claimed by the appellee that the fact that a bill of sale was given by appellant of the goods then in the store, and a chattel mortgage taken back on the 13th day of January, 1877, tends to show that the business had been conducted by her from the decease of her husband up to that time, and that when taken in connection with the testimony of young Jacobson, when he was employed by Charles Martins to assist in the business, that appellant told him to tend the store, sell goods, drive the horse, etc., and that appellant used to come into the store frequently and look over the books, and get provisions, and that several times she got money—makes a case in which Charles Martins

would be legally authorized to bind the appellant by his purchase of goods.

If this were all the testimony on the question, it might make a *prima facie* case, but on the part of appellant it is claimed she had no interest whatever in running the business; that on the decease of her husband she gave the business over to her brother-in-law, Charles Martins, who ran the same on his own account and for his own benefit.

She testifies that she had no interest in the business, and as a consequence Charles had no authority from her to buy the goods in question on her account; that she did not know what was bought for the store, or anything about the condition of the business; that she never derived any profit from the business, or contributed anything to it, or exercised any control over it. That true it was she obtained provisions from the store for the house, but that they were charged to her on the books. Denies ever having got any money from Charles, except $5.00 to apply on the board of himself and his clerk, Jacobson, and $140.00, which she let him have when he went into the store, and also such moneys as were due to her husband at the time of his decease, and which Charles had collected and did not pay over to her; denies ever looking over the books at any time when in the store; denies ever giving Jacobson the direction what to do, as testified to by him; that she never knew appellee until after this suit was commenced; that she asked him why he had not told her about it before, to which appellee replied: because Charles Martins did not want him to tell her anything about it. She testifies that she told Charles Martins not to run the business in the name of her deceased husband, and he told her it was none of her business. This was substantially all the testimony in the case.

It will be thus seen that the testimony of Jacobson to the alleged principal acts of the appellant tending to show that she exercised acts of ownership and proprietorship of the store, is flatly contradicted and explained away by the testimony of the appellant. She denies having given him any direction whatever about his duties at the store, and explains what money she received there, and testifies that such provisions as she got

there were charged to her on the books, same as any other customer; and upon these material points, if she is entitled to credit, the testimony is evenly balanced.    She is unimpeached, and apparently entitled to credence, and the burden being on the appellee to show authority in Charles Martins to bind the appellant, we think this proof fails to show it.

Her testimony is uncontradicted except as to the directions Jacobson says she gave him about his duties, and her examination of the books.

In the light of her explanation of the money and provisions received, and her denial of the balance of Jacobson's testimony, it is not easy to perceive by what evidence the verdict is sustained.    We think the evidence entirely fails to make a case, and that it was error for the court to find and to give judgment for the appellee on the evidence submitted, and for which the judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.